IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-01067-PAB

GARY D. DAVID,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Gary David. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On November 6, 2009, plaintiff applied for disability insurance benefits under Title II of the Act. R. at 14. Plaintiff alleged that he had been disabled since December 15, 2006. *Id*. After an initial administrative denial of his claim, plaintiff received a hearing before an Administrative Law Judge ("ALJ") on January 12, 2012. *Id*. On February 16, 2012, the ALJ issued a decision denying plaintiff's claim. *Id.* at 23. The

---

[1]The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

ALJ found that plaintiff had the following severe impairments: history of right shoulder and neck injury, degenerative disc disease, status-post hernia repair, and insomnia. R. at 17. The ALJ concluded that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, R. at 18, and ruled that plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can stand or walk four hours and sit four to six hours of every eight hour workday. He can push or pull occasionally bilaterally and is capable of frequent bilateral foot controls. The claimant can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs, balance and stoop. He can never kneel or crawl. He is not able to perform repetitive rotation, flexion or extension of the neck. The claimant is limited to frequent reaching bilaterally [but] only occasional bilateral overhead reaching. He is capable of frequent bilateral handling, fingering and feeling. The claimant is to avoid concentrated exposure to weather and outside atmospheric conditions and extreme cold. He should avoid even moderate exposure to excessive vibration and dangerous moving machinery. The claimant should avoid all exposure to unprotected heights.

R. at 19. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff was unable to perform any past relevant work, R. at 21, but that plaintiff was not disabled as "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. at 22.

The Appeals Council denied plaintiff's request for review of this denial. R. at 1. Thus, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A. Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether

the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only

> unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

### C. The ALJ's Decision

#### *1. Medical Opinions*

Plaintiff argues that the ALJ erred in evaluating the opinion of Physician Assistant Brian Jackson. Docket No. 14 at 11. On October 26, 2010, Mr. Jackson completed a functional capacity evaluation of plaintiff. R. at 317-324. Mr. Jackson indicated that plaintiff's principal diagnosis was cervical and thoracic disk degeneration and that plaintiff suffered from, among other things, left leg, left shoulder, and left knee problems, chronic pain syndrome, and migraines. R. at 319. Mr. Jackson stated that plaintiff's left knee diagnosis had been present since 2003 and cervical disk diagnosis present since 1997. *Id.* Mr. Jackson stated that the basis of his diagnosis was "x-rays, MRIs, surgery." *Id.* Mr. Jackson found that plaintiff has poor mobility of his back at L-5, "no range of motion," and an "inability to rotate without difficulty." *Id.* Mr. Jackson concluded that, with normal breaks, plaintiff was limited to sitting for 25 minutes and limited to standing and walking for 15 minutes. *Id.* Mr. Jackson concluded that, during an eight hour day, plaintiff could sit for no more than two hours, stand for no more than two hours, and walk for no more than two hours. *Id.* Mr. Jackson found that plaintiff had limited strength in his left arm and bilateral elbow, such that plaintiff could frequently lift less than five pounds, occasionally lift between five to ten pounds, and never left more than ten pounds. R. at 320. Mr. Jackson concluded that plaintiff was "totally restricted" from climbing stairs or ladders, was able to bend infrequently, and

5

required a fifteen minute rest period every fifteen minutes. R. at 320-21. As to plaintiff's mental capabilities, Mr. Jackson found that plaintiff was forgetful and had difficulty concentrating due to pain, which further caused restrictions in plaintiff's ability to understand, remember, and carry out simple instructions, to respond appropriately to work situations, and to deal with changes in a routine work situation – restrictions which, in Mr. Jackson's opinion, had been present since October 1998. R. at 321, 324. Mr. Jackson determined that plaintiff had several manipulative restrictions. R. at 322. Mr. Jackson concluded that, as a result of the aforementioned limitations, plaintiff had no ability to work full time, even in sedentary work. R. at 323.

> The ALJ rejected Mr. Jackson's opinion
>
> on the basis that it was formulated by an unacceptable medical source and I assign little weight to what little information could be gleaned from this opinion. Mr. Jackson based his opinion on the claimant's subjective complaints and seemed to utilize evidence that is not supported by the medical evidence of record. Furthermore, the opinion is not consistent with the medical evidence and is contradicted by both examining physicians and the physicians associated with the State Disability Determination Service.

R. at 21.

"Acceptable medical sources include licensed medical or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. § 404.1513(a)). Only those sources can provide evidence establishing a medically determinable impairment, can provide a medical opinion, or can be considered treating sources. *Id.* However, information from "other sources," such as nurse practitioners and physicians assistants "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR

06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). When evaluating the opinions of "other sources," an ALJ should apply the factors listed in 20 C.F.R. § 404.1527(d). *Id.* at *4.

An ALJ must consider the following factors in determining how to evaluate the opinion: length of the treating relationship, frequency of examination, nature and extent of the treating relationship, evidentiary support, consistency with the record, medical specialization, and other relevant considerations. § 404.1527(c). An ALJ may dismiss or discount an opinion from a medical source only if the decision to do so is "based on an evaluation of all of the factors set out in the cited regulations" and if he provides "specific, legitimate reasons" for his rejection. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). However, an ALJ need not "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion," so long as he provides "good reasons in his decision" for the weight accorded to each opinion. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Plaintiff primarily argues that the ALJ improperly rejected Mr. Jackson's opinion only because he is not an acceptable medical source. Docket No. 14 at 12.[2] The ALJ's decision does not support plaintiff's argument. Although the ALJ correctly noted that Mr. Jackson was not an acceptable medical source, the ALJ also considered the relevant § 404.1527 factors and found that Mr. Jackson's opinion lacked evidentiary

---

[2]The functional capacity evaluation appears to have been reviewed by Dr. Vaughn Jackson. R. at 323. However, because plaintiff does not argue that the evaluation should therefore be considered an opinion of Dr. Jackson, an acceptable medical source, the Court will not analyze Mr. Jackson's functional capacity evaluation as such. *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

support and was otherwise inconsistent with medical evidence in the record.  *See* § 404.1527(c)(3)-(4).  Thus, to the extent plaintiff argues that the ALJ failed to apply the appropriate legal standard in evaluating Mr. Jackson's opinion, plaintiff's argument is unsupported.

Plaintiff also argues that the ALJ's other stated reasons for rejecting Mr. Jackson's opinion are vague and insufficient to allow a subsequent reviewer to follow the ALJ's reasoning.  Docket No. 14 at 13.  Plaintiff contends that the ALJ assumed that Mr. Jackson's opinion was based upon plaintiff's subjective complaints, when, in fact, Mr. Jackson cited undisputed medical findings.  Docket No. 14 at 12.  Defendant responds that there is no evidence that Mr. Jackson treated plaintiff after 2008 and that Mr. Jackson's last treatment note was dated November 2006.  Docket No. 17 at 18; *see also* R. at 252, 258-59.  Plaintiff concedes that the record does not contain treatment records from more recent visits with Mr. Jackson, but argues that plaintiff testified at the hearing that he had been seeing Mr. Jackson two to three times a year for more than ten years, including as recently as October 2011.  Docket No. 20 at 3 (citing R. at 62-63).  Although a close case, the Court agrees that the ALJ's treatment of Mr. Jackson's opinion warrants remand.  The ALJ found, in part, that Mr. Jackson "based his opinion on the claimant's subjective complaints and seemed to utilize evidence that is not supported by the medical evidence of record."  R. at 21.  However, it is unclear upon what the ALJ based this conclusion.  Mr. Jackson fails to explain, in any meaningful way, how "x-rays, MRIs, [and] surgery," R. at 319, led to the diagnosis set forth in the opinion and in turn why those diagnoses warrant the limitations set forth in the functional assessment.  Mr. Jackson does not explain when he last examined or spoke

8

with plaintiff or what medical evidence, in addition to imaging and surgery, he based his opinion on. Although it is difficult to imagine Mr. Jackson arriving at the limitations set forth in the functional assessment without relying, at least in part, on plaintiff's subjective complaints, Mr. Jackson's opinion does not explicitly mention plaintiff's subjective complaints. Thus, there is insufficient support in the record for the ALJ's conclusion that Mr. Jackson's opinion was based upon plaintiff's subjective complaints. And, because Mr. Jackson's opinion does not identify, with any specificity, the evidence upon which he relied, the Court cannot conclude that substantial evidence supports the ALJ's conclusion that Mr. Jackson relied on evidence "not supported by the medical evidence of record." See R. at 21. Given the deficiencies in Mr. Jackson's opinion, the ALJ's rejection of the opinion is understandable. Had the ALJ rejected Mr. Jackson's opinion as lacking internal support, then the Court would have little difficulty upholding the ALJ's treatment of Mr. Jackson's opinion. However, the Court cannot provide a post-hoc rationale for the ALJ's decision, *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005), and, because Mr. Jackson does not indicate the basis for his opinion, the Court cannot conclude that substantial evidence supports the ALJ's reasons for rejecting it.

     The ALJ's treatment of Mr. Jackson's opinion raises another uncertainty. In rejecting Mr. Jackson's opinion, the ALJ also found that Mr. Jackson's opinion was inconsistent with opinions offered by other "examining physicians and the physicians associated with the State Disability Determination Service," but the ALJ does not indicate to which physicians or to what inconsistencies she refers. R. at 21. The ALJ may wish to resolve this uncertainty on remand.

There is an additional issue surrounding Mr. Jackson's treatment of plaintiff that weighs in favor of remand. The ALJ based her credibility determination, in part, on the fact that plaintiff did not pursue treatment for his right shoulder injury and neck pain. R. at 20. In his reply brief, plaintiff argues that, because "the State agency and SSA last requested records from Plaintiff's primary care physician nearly two years before the hearing in March 2010," the record did not contain treatment records after February 2008. Docket No. 20 at 3. As a result, plaintiff argues that the ALJ failed to adequately develop the record. *Id.*³

Plaintiff was not represented by counsel at the hearing. It appears that, on February 3, 2011 and again on December 27, 2011, plaintiff was sent a form entitled Claimant's Recent Medical Treatment, directing plaintiff to list instances since August 20, 2010 when he had been treated or examined by a doctor. *See* R. at 107, 117. There is no indication that plaintiff returned these forms. At the hearing, the ALJ noted that Exhibit 3F contained records from the Conejos Medical Clinics for treatment between September 2003 and February 2008. R. at 35; *see also* R. at 252-288. At the hearing, plaintiff testified that, the past fall, he visited Dr. Jackson's office,⁴ where his

---

³Plaintiff raises this issue in response to defendant's argument that Mr. Jackson's opinion is entitled to lesser weight (and Dr. Velma Campbell's opinion entitled to greater weight) because there is no evidence that Mr. Jackson examined plaintiff or provided any treatment after early 2008. Docket No. 17 at 18. Thus, although plaintiff raises the ALJ's failure to develop the record for the first time in his reply brief, the Court finds it appropriate to consider plaintiff's argument on this issue. *See In re Gold Res. Corp. Secs. Litig.*, 776 F.3d 1103, 1119 (10th Cir. 2015) ("we make an exception when the new issue argued in the reply brief is offered in response to an argument raised in [a response] brief").

⁴Dr. Jackson and Mr. Jackson appear to operate out of the same office. *See, e.g.*, R. at 254.

blood pressure was elevated due to his inability to manage his pain. R. at 56-57. Plaintiff testified that Mr. Jackson prescribed him Fentanyl "this last fall," but that it made him nauseous. R. at 57-58, 62-63; *see also* R. at 59. Plaintiff testified that he first began seeing "Brian Jackson" ten years ago and sees him an average of two to three times a year and that his last visit was in October of 2011. R. at 62-63.[5] Plaintiff testified that he had Mr. Jackson fill out a functional assessment a little over a year before the hearing, R. at 76, which the ALJ received into evidence. *See* R. at 317-324. The ALJ asked if plaintiff had any other medical opinions that he could share, R. at 78, and plaintiff responded that he knew of a functional capacity evaluation that had been conducted by a Dr. Somerset in Alamosa, Colorado in 2006 or 2007. R. at 79. The ALJ indicated that, with plaintiff's authorization, she would attempt to acquire that assessment, R. at 80, but that assessment does not appear to be part of the record.

Because social security hearings are nonadversarial, "the ALJ bears responsibility for ensuring that an adequate record is developed during the disability hearing consistent with the issues raised." *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (quotations omitted). This includes a duty to obtain "pertinent, available medical records which come to his attention during the course of the hearing," – a duty which "is especially strong in the case of an unrepresented claimant." *Carter v. Chater*, 73 F.3d 1019, 1021-22 (10th Cir. 1996). Here, plaintiff's testimony suggests that

---

[5]At the hearing, the ALJ and plaintiff appeared to refer to Dr. Jackson and Mr. Jackson as though they were the same person. *See, e.g.*, R. at 62. However, both Dr. Jackson and Mr. Jackson appear to work out of the same office and neither party argues that this apparent confusion is relevant to the issues raised in plaintiff's appeal. *See* R. at 252.

plaintiff, at a minimum, visited Mr. Jackson in the fall of 2010, when Mr. Jackson completed the functional assessment, and again in the fall of 2011, when plaintiff testified that Mr. Jackson prescribed him Fentanyl. R. at 57-58, 62-63. Moreover, plaintiff testified that he visited Mr. Jackson an average of two to three times a year. R. at 62-63. Although there is no indication that plaintiff completed and submitted the Claimant's Recent Medical Treatment forms as directed, in light of the fact that plaintiff was unrepresented, plaintiff's hearing testimony was, by itself, sufficient to bring to the ALJ's attention the possibility that additional medical records were available. *Cf. Maes*, 522 F.3d at 1097 ("we will not ordinarily reverse or remand for failure to develop the record when a claimant is represented by counsel who affirmatively submits to the ALJ that the record is complete"); *Connick v. Barnhart*, 134 F. App'x 265, 267 (10th Cir. 2005) (unpublished) ("no information about any doctor named Sloan or Stoan was brought to the ALJ's attention [and, a]ccordingly, the ALJ had no duty to seek records from" doctors by those names). Although plaintiff's counsel on appeal has not specifically identified, and does not appear to have actually obtained, the records about which plaintiff now complains, *see Maes*, 522 F.3d at 1097, the record does not indicate that, other than attempting to acquire a functional assessment by a Dr. Somerset, the ALJ attempted to ascertain whether there exist more recent treatment records from Dr. Jackson and Mr. Jackson. Absent such an indication, the Court cannot conclude that the ALJ satisfied her duty to develop the record. Because the ALJ's credibility determination rested, in part, on the conclusion that plaintiff did not continue to pursue treatment, the Court cannot conclude, on the current record, that the ALJ's failure to further develop the record, if any, was harmless. *Cf. Branum v. Barnhart*, 385 F.3d

1268, 1272 (10th Cir. 2004) (concluding that, where claimant was represented by counsel, ALJ's failure to acquire records more than a year before alleged onset date was not reversible error).

### 2. *Credibility*

Plaintiff challenges the ALJ's credibility determination. Docket No. 14 at 5. "Credibility determinations are peculiarly the province of the finder of fact" and the Tenth Circuit will uphold such determinations, so long as they are supported by substantial evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). Credibility determinations may not be conclusory, but must be "closely and affirmatively linked" to evidence in the record. *Id.* However, the "possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations omitted). The court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.*

In assessing a claimant's credibility, an ALJ must consider the following factors, in addition to the objective medical evidence:

   1.  The individual's daily activities;

   2.  The location, duration, frequency, and intensity of the individual's pain or other symptoms;

   3.  Factors that precipitate and aggravate the symptoms;

   4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); *see also* 20 C.F.R. § 404.1529(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . ."). "Because a credibility assessment requires consideration of all the factors 'in combination,' when several of the factors *relied upon* by the ALJ are found to be unsupported or contradicted by the record, we are precluded from weighing the remaining factors to determine whether they, in themselves, are sufficient to support" the credibility determination. *Bakalarski v. Apfel*, 1997 WL 748653, at *3 (10th Cir. Dec. 3, 1997) (quoting *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988)).

### a. Daily Activities

Plaintiff argues that the ALJ erred in evaluating his daily activities. Docket No. 14 at 6. Plaintiff testified that he was capable of lifting ten pounds, but that his back would occasionally give out without warning if, for example, he lifted something off the tailgate of a pickup truck. R. at 73-74. As to this testimony, the ALJ stated

> [Plaintiff] claimed that he could lift no more than ten pounds but only the opinion of Mr. Brian Jackson, a physicians' assistant[,] found the claimant unable to lift weights greater than ten pounds. Furthermore, the claimant cares for horses, cares for his own home and participates in activities where he would more likely than not occasionally encounter weights greater than ten pounds, such as grocery shopping. There is no evidence the claimant

>  requires help carrying his groceries or lifting the accoutrements of horse
>  care.

R. at 20. At the hearing, plaintiff testified that he "used to have horses," but gave them up after having surgery on his neck. R. at 50-51. Plaintiff also testified that he did not take care of any pets. R. at 51, 189. Defendant concedes that the ALJ erred in concluding that plaintiff cares for horses, but argues that such an error is harmless. Docket No. 17 at 16. The Court understands defendant to argue that, although the ALJ erroneously found that plaintiff cares for horses, there is substantial evidence in the record as a whole to support the ALJ's credibility finding regarding plaintiff's lifting ability. Docket No. 17 at 16 (citing *Lax v. Astrue*, 489 F.3d 1080, 1088 (10th Cir. 2007)).

The ALJ concluded that plaintiff could perform light work as defined by § 404.1567(b), but did include further limitations in plaintiff's RFC with respect to lifting. R. at 19. Thus, plaintiff's RFC provides that plaintiff may "lift[] no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." § 404.1567(b). In determining plaintiff's RFC, the ALJ appeared to reject plaintiff's testimony that he could lift no more than ten pounds for three reasons: (1) a finding that such a limitation was supported only by the opinion of Mr. Jackson, (2) a finding that plaintiff cares for horses, and (3) a finding that plaintiff would occasionally encounter weights greater than ten pounds during activities such as grocery shopping. *See* R. at 20. In order to conclude that the ALJ's error as to the second reason is harmless, defendant must establish that the first and third reasons constitute substantial evidence supporting the ALJ's overall conclusion. *See Lax*, 489 F.3d at 1089. This defendant

fails to do. Defendant argues that the ALJ's first reason is supported by substantial evidence because Dr. Gargaro's, Dr. Hatzidakis', and Dr. Jackson's treatment notes all support the ALJ's rejection of plaintiff's allegation that he could lift only ten pounds. Docket No. 17 at 14. Defendant also argues that the ALJ's determination is further supported by the fact that plaintiff lifted 30 to 40 pounds and as much as 100 pounds in his last job, prior to the alleged onset date. *Id.* (citing R. at 42-43, 202). However, because the ALJ does not appear to have engaged in such reasoning, the defendant's arguments amount to a post-hoc rationalization of the ALJ's decision. Moreover, as discussed above, the record does not entirely support the ALJ's reasons for rejecting Mr. Jackson's opinion. Defendant does not squarely address the ALJ's third stated reason for finding plaintiff's subjective lifting limitation not credible, nor does defendant argue that plaintiff's daily activities, by themselves, constitute substantial evidence in support of the ALJ's conclusion on this issue. For the foregoing reasons, the Court lacks a sufficient basis upon which to conclude that the ALJ's erroneous finding that plaintiff cares for horses and "lift[s] the accoutrements of horse care" constitutes harmless error. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (holding that harmless error exists only when "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way"); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (holding that, where medical opinion would not have aided plaintiff, ALJ's failure to weigh such opinion was not harmless error).

Although credibility determinations are peculiarly the province of the ALJ, the ALJ erred in evaluating plaintiff's daily activities and, as discussed above, uncertainty

exists as to whether the ALJ considered all relevant medical records in concluding that plaintiff's failure to pursue treatment, in part, rendered plaintiff's subjective complaints incredible. The Court declines to weigh the remaining factors relevant to credibility to determine whether they are, in themselves, sufficient to support the ALJ's overall credibility determination. *See Bakalarski*, 1997 WL 748653, at *3.

### 3. Step Two

Plaintiff argues that the ALJ erred at step two in concluding that plaintiff's knee injury was not a severe impairment. Docket No. 14 at 13. The ALJ concluded that, in December 2007, plaintiff suffered an injury to his left patellar tendon. R. at 17. The ALJ further stated that plaintiff

> sought no subsequent care for this injury, took no medications, sought no physical therapy or even alternative therapies for his allegedly disabling left knee impairment. Dr. Campbell reported the claimant used to assistive device to ambulate, was on and off the exam table without any assistance and had a mildly guarded gait but due to his alleged back and neck impairments and not because of a knee injury. Therefore, without evidence that the claimant's left knee injury lasted or was expected to last for more than twelve months and given the complete lack of follow-up treatment, . . . I consider the left knee injury to be non-severe.

*Id.* (citation omitted). Plaintiff argues that the ALJ erred in finding that plaintiff sought no treatment for his knee because no treatment was available. Docket No. 14 at 10-11. In support of his argument, plaintiff cites a July 31, 2007 Office Note from Dr. John M. Gargaro, where Dr. Gargaro concluded that plaintiff's left knee had no "operative pathology." R. at 236-37. However, plaintiff fails to account for the fact that the remainder of Dr. Gargaro's note weighs against plaintiff's argument that his knee injury was a severe impairment. The note states that Dr. Jackson referred plaintiff to Dr. Gargaro for an orthopedic consultation. R. at 236. Plaintiff stated that he had a history

of left knee pain since 2004. *Id.* Dr. Gargaro concluded that plaintiff's left knee appeared normal, with no sign of swelling and mild to moderate, but not exquisite, medial joint line tenderness. *Id.* Dr. Gargaro reviewed an x-ray and an MRI, which were unremarkable. *Id.* Dr. Gargaro found that, despite plaintiff's claims to the contrary, there was no evidence of a split patellar tendon. *Id.* Dr. Gargaro concluded that there was no operative pathology and no arthritis and that "I think this is something that he needs to sort of live with. It may bother him at work. If it becomes more severe, we might want to repeat his MRI, but at this point, I do not see any operative indications." R. at 237. Although plaintiff interprets Dr. Gargaro's note as an opinion that no further treatment is possible, this interpretation is contradicted by the note itself, which directs plaintiff to return if the knee pain becomes severe. There is no evidence that plaintiff again visited Dr. Gargaro because his knee pain became severe. Moreover, the findings set forth in Dr. Gargaro's note do not undercut, let alone overwhelm, the ALJ's conclusion that plaintiff's knee injury was not a severe impairment.

Dr. Jackson's December 21, 2007 chart note does not compel an alternative conclusion. Dr. Jackson stated that plaintiff fell, hit his knee, and split the patellar tendon causing "a lot of pain in the front of the knee with pressure or movement kneeling or bumping" and that plaintiff had a meniscal tear at the time of the injury. R. at 256. This note fails to account for Dr. Gargaro's opinion that there was no evidence of a split patellar tendon and, moreover, does not overwhelm the ALJ's conclusion on this issue. *See Musgrave*, 966 F.2d at 1374.

Plaintiff next argues that, because "every medical source indicated that Plaintiff's

knee was causing at least some pain," the ALJ should have concluded that plaintiff's knee was a severe impairment. Docket No. 14 at 14. However, the fact that plaintiff's left knee condition was described by him or examining physicians as "discomfort," R. at 227, "[m]ild left knee pain," R. at 237, or "intermittent aching and pain," R. at 308, does not, by itself, compel the conclusion that plaintiff's left knee pain "significantly limits [his] physical or mental ability to do basic work activities" so as to render plaintiff's left knee condition a severe medical impairment. § 404.1520(c). Moreover, as the ALJ acknowledged, she was required to consider "all of [plaintiff's] medically determinable impairments of which we are aware, including [plaintiff's] medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity." § 404.1545(a)(2); *see also* R. at 16. Plaintiff does not claim that the ALJ failed to consider his knee pain at subsequent steps in the analysis, or explain why any error at step two is not rendered harmless by the ALJ's finding of other severe impairments at step two. In the absence of such arguments, the Court finds that plaintiff has failed to establish that the ALJ erred at step two. *See Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished) ("an error at step two of the sequential evaluation concerning one impairment is usually harmless when the ALJ, as occurred here, finds another impairment is severe and proceeds to the remaining steps of the evaluation" (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008)).

## III.  CONCLUSION[6]

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner denying disability benefits to plaintiff is **REVERSED** and **REMANDED** for additional proceedings consistent with this opinion.

DATED September 29, 2015.

                                    BY THE COURT:


                                     s/Philip A. Brimmer
                                    PHILIP A. BRIMMER
                                    United States District Judge

---

[6]The Court declines to reach the remainder of plaintiff's arguments because they may be "affected by the ALJ's treatment of this case on remand."  See *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).